CENTRAL AUTO EQUIPMENT CO., SUCCESSOR TO BITTEL-LEFTWICH SERVICE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10506.       Promulgated August 12, 1927.

Taxpayer *held* not affiliated with the Bittel-Leftwich Tire Service Co. of St. Louis from January 1, 1918, to November 30, 1920, inclusive.

*Joseph P. Renard, Esq.*, for the petitioner.
*P. J. Rose, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits tax for the period July 1 to November 30, 1918, and for the fiscal years ended November 30, 1919, and November 30, 1920, aggregating $2,515.94. The proceeding is based upon the dis-

allowance by the respondent of affiliation of the petitioner with the Bittel-Leftwich Tire Service Co. of St. Louis, from July 1, 1918, to November 30, 1920, inclusive.

### FINDINGS OF FACT.

The Bittel-Leftwich Tire Service Co. of St. Louis, in order to extend its business in the State of Illinois, established a branch in Springfield, Ill., which it caused to be incorporated on September 20, 1915, under the name of Bittle-Leftwich Tire Service Co. The St. Louis company was engaged in business as dealers in automobile accessories, tires, tubes, vulcanizing, etc., and the branch established at Springfield, Ill., was engaged in the same business. On December 1, 1919, the name of the Illinois corporation was changed to Central Auto Equipment Co., which is the petitioner. In July, 1919, the name of the Missouri corporation was changed to the Lee Tire Service Co.

The petitioner was organized with a capital stock of $10,000 divided into 100 shares of a par value of $100 each. This stock was issued as follows:

| Owner: | Shares |
|---|---|
| C. G. Bittel | 49 |
| B. O. Leftwich | 48 |
| A. Turner | 1 |
| Phil Stewart | 1 |
| Helen Murray | 1 |
| Total | 100 |

At a meeting of the stockholders of the petitioner held November 8, 1917, it was voted to increase the authorized capital stock from 100 to 500 shares, par value $100 per share, and additional shares of stock were issued. There were 348 shares outstanding on November 30, 1918, as follows:

| Owner | Date of issue | Shares | Owner | Date of issue | Shares |
|---|---|---|---|---|---|
| A. R. Keller | Mar. 7, 1918 | 5 | J. T. Wilcox | July 6, 1918 | 5 |
| F. W. Webb | Mar. 7, 1918 | 10 | J. W. Sanders | July 6, 1918 | 2½ |
| A. Turner | Mar. 27, 1918 | 5 | R. Z. Sanders | July 6, 1918 | 2½ |
| F. Reidel | May 15, 1918 | 5 | B. O. Leftwich, trustee | July 13, 1918 | 260 |
| L. W. Shade | May 15, 1918 | 10 | J. D. Heck | July 17, 1918 | 10 |
| J. P. Turner | May 15, 1918 | 2½ | J. T. Wilcox | July 25, 1918 | 5 |
| W. M. Chiles | May 25, 1918 | 3 | F. E. Harold | Sept. 1, 1918 | 5 |
| T. J. Prentice | June 5, 1918 | 2½ | D. L. Griffin | Dec. 23, 1918 | 2½ |
| J. R. Holt | June 5, 1918 | 2½ | A. Turner | Dec. 23, 1918 | 2½ |
| E. D. Conrad | June 26, 1918 | 2½ | | | |
| C. B. Conrad | June 26, 1918 | 2½ | Total | | 348 |
| E. T. Crawford | June 27, 1918 | 2½ | | | |

There were no substantial changes in stock ownership during 1919. The stock held by B. O. Leftwich, trustee, was transferred to A. Chouteau, trustee, and two additional shares were issued to others,

making a total of 350 shares of stock outstanding at the end of 1919. There were a few minor changes in stock ownership during 1919 and the holdings of A. Chouteau, trustee, were reduced to 220 shares—40 shares being returned as treasury stock.

B. O. Leftwich and A. Chouteau were officers of the petitioner and were trustees for the Missouri corporation or its stockholders. The stock held by A. Turner and D. C. Griffin was merely for qualifying purposes and was within the custody and control of the officers of the corporation. The balance of the stockholders were not employees of the company and paid cash for their stock.

Most of the minority stockholders voted their stock by proxy, naming A. Turner as their proxy, but the proxies in no wise contain authority in any way to control the stock of the person issuing a proxy nor did anyone other than the holders of the stock, except in the case of the trustee's stock, and in the case of the shares standing in the name of Griffin and Turner, have control over the stock owned by the individual stockholder. Proxies were given for each stockholders' meeting. Goods were sold by the Missouri company to the petitioner at cost plus from 2 to 5 per cent for handling charges, freight, drayage, insurance, etc.

The Missouri corporation controlled the business policies of the petitioner in all its details. Checks of the petitioner were countersigned by an officer of the Missouri corporation who was also an officer of the petitioner. These checks had to be sent to St. Louis for signature and then were returned to the petitioner and mailed out.

The petitioner filed a consolidated return with the Bittel-Leftwich Tire Service Co. of St. Louis, and with its successor, the Lee Tire Service Co., for the taxable periods under consideration herein. The respondent has computed deficiencies in tax upon the basis that the companies were not affiliated.

OPINION.

SMITH: The petitioner claims to be affiliated with the Bittel-Leftwich Tire Service Co. of St. Louis, Mo., which claim has been denied by the respondent. The only issue in this case is the affiliation or nonaffiliation of the companies during the taxable periods July 1, 1918, to November 30, 1918, and the fiscal years ended November 30, 1919, and November 30, 1920.

The evidence shows that the two companies were in the same line of business; that the control of the business was under the guiding influence of representatives or nominees of the Missouri corporation. Separate books of account were kept by each company and the only evidence of intercompany relations is a purchasing arrangement

whereby the petitioner secured its merchandise and supplies at cost to the Missouri corporation plus handling charges.

The fact that the business policy and management were dictated by the Missouri corporation or its stockholders is not determinative of the issue; for the control of the business of a corporation is not control of the stock as contemplated by the statute. *Appeals of Old Colony R. R. Co.*, 1 B. T. A. 1067; *Norwich & Worcester R. R. Co.*, 2 B. T. A. 215; *Watsontown Brick Co.*, 3 B. T. A. 85. In *Appeal of Greenville Coaling & Export Corporation*, 4 B. T. A. 183, it was stated:

The fact of intercompany relations, or the absence of them, without the necessary stock ownership or control as provided in the statute, is not sufficient to permit or require affiliation.

The stock ownership of the petitioner as presented in the evidence may be summarized as follows:

| Owner | Nov 30, 1918 | | Nov 30, 1919 | | Nov. 30, 1920 | |
|---|---|---|---|---|---|---|
| | Shares | Per cent | Shares | Per cent | Shares | Per cent |
| Trustee for the Missouri Company or its stockholders | 260 | 75.8 | 260 | 74.28 | 220 | 70.97 |
| Qualifying shares | 5 | 1.46 | 10 | 2.86 | 10 | 3.22 |
| Minority, owning no stock in Missouri company | 78 | 22.74 | 80 | 22.86 | 80 | 25.81 |
| Total | 343 | 100 | 350 | 100 | 310 | 100 |

The ownership of stock by the trustee plus qualifying shares shown above does not of itself amount to " substantially all " the stock as required by the statute. *Appeals of Industrial Co. of Binghampton*, 2 B. T. A. 360; *James Butler Grocery Co.*, 4 B. T. A. 378; *Kiddy Shoe Service, Inc.*, 5 B. T. A. 268.

The minority stock in the petitioner was owned by investors who paid cash for their stock and acquired absolute ownership therein without any condition or agreement as to resale. They were not employees and were in no way connected with the Missouri corporation. The fact that the minority stockholders gave proxies for the voting of their stock is immaterial. As was stated in *Appeal of Tunnel Railroad of St. Louis*, 4 B. T. A. 596:

The giving of proxy is not a relinquishment by the donor of any of the rights of ownership or control.

In *Wofford Oil Co.* v. *Commissioner*, 5 B. T. A. 115, it was stated relative to a minority interest that a feeling of helplessness does not indicate any control of stock.

Although the question of affiliation or nonaffiliation of corporations is not to be determined solely on the basis of mathematical computa-

tions of stock holdings, *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666, we think that it can not be said that the Missouri corporation owned directly or controlled through closely affiliated interests, or by a nominee or nominees, substantially all of the stock of the petitioner or that substantially all of the stock of the two corporations was owned or controlled by the same interests during the taxable periods involved herein.

*Judgment will be entered for the respondent.*

Considered by LITTLETON.